UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA OLLIER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>SWEETWATER UNION HIGH SCHOOL, et al.,<br><br>    Defendants. | Case No.:  7-cv-00714-L-JLB<br><br>**REPORT AND RECOMMENDATION**<br><br><br><br>**[ECF No. 346]** |

## I.　INTRODUCTION

Before the Court is the parties' Joint Motion to Withdraw Enforcement Motion and Vacate Order to Show Cause. (ECF No. 346.) The parties jointly request that the Court approve the withdrawal of Plaintiffs' Motion to Enforce Permanent Injunction ("Enforcement Motion") (ECF No. 225). The parties further jointly request that the Court discharge the Order to Show Cause ("OSC") issued concurrently with its Order granting Plaintiffs' Enforcement Motion (ECF No. 249). This Report and Recommendation is submitted to the Honorable M. James Lorenz pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1 of the United States District Court for the Southern District of California. For the reasons set forth below, the Court **RECOMMENDS** that the District Court **GRANT** the parties' joint motion.

## II. BACKGROUND

Plaintiffs initiated this class action on April 19, 2007, alleging violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"). (ECF No. 1.) Plaintiffs were female students at Castle Park High School ("CPHS") in the Sweetwater Union High School District ("SUHSD") who participated or would have participated in interscholastic athletic activities. On March 30, 2009, Judge Lorenz granted Plaintiffs' Motion for Summary Adjudication against Defendant SUHSD ("Defendant") on their second cause of action, finding that Defendant was not in compliance with Title IX due to the unequal athletic opportunities for female students at CPHS. (ECF No. 87.) On February 9, 2012, after a ten-day bench trial, Judge Lorenz found that Plaintiffs were entitled to injunctive relief with respect to Defendant's failure to provide equal treatment and benefits for female student-athletes at CPHS and its retaliation against the girls' softball coach. (ECF No. 193.) In his Findings of Fact and Conclusions of Law ("FFCL"), Judge Lorenz ordered by permanent injunction that Defendant "comply with Title IX in all aspects of its athletic programs and activities at CPHS" and that all identified violations be corrected. (*Id.* at 30–31.) Judge Lorenz further ordered the parties "to jointly prepare a proposed compliance plan to include the Court's continuing jurisdiction and the monitoring of [D]efendants' athletic programs and activities." (*Id.* at 31.)

On March 8, 2012, Defendants moved for amended, additional, or new findings under Federal Rule of Civil Procedure 52(b) and 59(a)(2) ("Motion for New Findings"). (ECF No. 197.) The parties submitted a Joint Compliance Plan as ordered in the FFCL on March 26, 2012, but disputed certain provisions in the plan. (ECF No. 200.) Following the parties' submission of the disputed joint compliance plan, Judge Lorenz denied Defendants' Motion for New Findings, and Defendants appealed the FFCL and the denial of the Motion for New Findings. (ECF Nos. 204; 205.)

On July 15, 2013, while Defendants' appeal was pending, Plaintiffs moved to enforce the permanent injunction ("Enforcement Motion"). (ECF No. 225.) In their motion, Plaintiffs argued that Defendant had not yet taken any steps to comply with the

Court's injunction and remedy its Title IX violations. (*See id.*) Plaintiffs requested that the Court issue an order to show cause why Defendant should not be held in contempt for its inaction. (*See id.*) Plaintiffs also requested the Court's assistance in resolving the disputed provisions in the Joint Compliance Plan. (*Id.* at 12.) On August 26, 2013, Judge Lorenz ordered additional briefing on the Enforcement Motion and directed the parties to Magistrate Judge William McCurine for resolution of the Joint Compliance Plan disputes. (ECF No. 231.)

After extensive briefing on the Enforcement Motion, Judge Lorenz found it "beyond dispute" that Defendant was not yet in compliance with Title IX with respect to equal participation opportunities for female student-athletes at CPHS. (*See* ECF No. 249 at 4–6.) Judge Lorenz further found that Defendant was not yet in compliance with Title IX with respect to equitable treatment and benefits for female student-athletes at CPHS. (*See id.* at 6–13.) Regarding both these aspects of Title IX compliance, Judge Lorenz was concerned with Defendant's "lack of verifiable documentation of compliance or even attempted compliance," characterizing its "absence of inventories" and "reports and evaluations" as a "haphazard approach" to compliance. (*Id.* at 5, 12–13.) While recognizing that Defendant had "taken some remedial measures . . . and made some progress with gender equality in its athletic program," Judge Lorenz found that any "progress [was] not consistent, adequate, comprehensive or well documented, planned or reasoned." (*Id.* at 15.)

Accordingly, on March 17, 2014, Judge Lorenz granted Plaintiffs' Enforcement Motion and ordered Defendant to show cause why it should not be held in contempt for its failure to comply with the permanent injunction. (*Id.* at 16.) Extensive and pointed briefing on the OSC ensued and was completed after Plaintiffs filed a sur-reply on June 9, 2014. (*See* ECF Nos. 256; 259; 262; 263.) In sum, Defendant submitted over 1,000 pages of declarations and exhibits in support of its Statement of Cause, arguing that it had, and continued to be, in full compliance with the permanent injunction. (*See* ECF Nos. 256; 262.) Plaintiffs in response argued that the Statement of Cause failed to show that

Defendant was *unable* to comply with the permanent injunction, the sole inquiry for the contempt determination. (*See* ECF Nos. 259; 263.) Accusing Defendant of gamesmanship, Plaintiffs contended that Defendant was attempting to relitigate the issue of compliance—a determination Judge Lorenz had already made when he granted Plaintiffs' Enforcement Motion. (*See id.*) Plaintiffs requested that the Court order per diem sanctions of $500 until Defendant took steps to comply with the injunction. (ECF No. 259 at 29.) Plaintiffs further sought an award of $268,178.20 in attorneys' fees and costs incurred from bringing the Enforcement Motion and briefing the OSC. (*Id.* at 29–30.) The OSC was never discharged.

Meanwhile, on January 30, 2014, Magistrate Judge McCurine issued a Report and Recommendation with respect to the disputed provisions in the parties' Joint Compliance Plan. (ECF No. 246.) Notably, Magistrate Judge McCurine recommended that the Court order a ten-year compliance period. (ECF No. 246.) The parties filed the Final Joint Compliance Plan on February 13, 2014, and Judge Lorenz adopted Magistrate Judge McCurine's Report and Recommendation on March 24, 2014. (ECF Nos. 248; 251.)

Following the parties' briefing on the OSC, Defendant began to submit fall, winter, spring, and annual status reports beginning in September 2014, as required by the Final Joint Compliance Plan. Since September 2014, Defendant has submitted over twenty status reports to the Court. (ECF Nos. 266; 276; 287; 290; 299; 304; 312; 318; 320; 324; 328–30; 333; 336–38; 340–43; 348; 351.)

On December 20, 2019, the Court set an in-person, counsel-only Status Conference to check-in with the parties and to inquire as to whether seasonal status reports remained necessary for the duration of the compliance period. (ECF No. 344.) On February 18, 2020, the Court held the in-person Status Conference with counsel for the parties in attendance. (ECF No. 347.) In advance of the Status Conference, the parties filed the instant Joint Motion to Withdraw Enforcement Motion and Vacate Order to Show Cause on January 16, 2020. (ECF No. 346.)

///

### III. DISCUSSION

The parties jointly request that the Court approve the withdrawal of Plaintiffs' Enforcement Motion and discharge the OSC issued concurrently with the Order granting the Enforcement Motion.  Now six years into the ten-year compliance period, the parties' joint motion illustrates how conditions—compliance with the permanent injunction and the parties' relationship—have changed since Plaintiffs filed the Enforcement Motion in 2013:

> Defendants have submitted over twenty timely [status] reports with corresponding evidentiary documentation to the Court pursuant to the Joint Compliance Plan.  Plaintiffs have provided written feedback to Defendants on every report and progress made towards the standards outlined in the Joint Compliance Plan.  The parties have a collaborative working relationship and have open lines of communication regarding any issues or concerns that arise and meet in person on at least an annual basis at the site visit (per the Joint Compliance Plan).  Since March 2017, Defendants have reported annual substantial proportionality with regard[] to the girls' and boys' athletic participation rates at [CPHS], a major factor in the [OSC].

(ECF No. 346 at 4 (citations omitted).)

Having reviewed the contentious history of this case, the Court agrees that the circumstances present when Plaintiffs filed their Enforcement Motion seven years ago have changed considerably, and for the better.  From this Court's perspective, Defendants now, and for the past several years, have demonstrated at least substantial compliance with the permanent injunction.  As highlighted by the parties in their joint motion, the OSC was prompted largely by Judge Lorenz's finding that it was "beyond dispute" that Defendant was still not affording female students at CPHS equal participation opportunities in athletics in 2014.  (*See* ECF No. 249 at 4–6.)  The parties concur that since March 2017, substantial proportionality has existed with respect to girls' and boys' athletic participation rates.  (ECF No. 346 at 4.)  Defendant's March 2017 status report indeed shows that in the 2016–2017 school year, females comprised 47.8% of the student enrollment, and of the 634 students who participated in fall, winter, and spring sports, 49.4% were female.  (ECF No. 328 at 8.)  A review of the parties' last three seasonal status reports for the 2019–2020

school year shows that substantial proportionality has remained. Females comprised approximately 45% of the enrollment at CPHS and accounted for 54.1%, 63.5%, and 53.8% of all student-athletes participating in fall, winter, and spring sports, respectively. (ECF Nos. 342 at 8; 343 at 8; 348 at 10).

In issuing the OSC, Judge Lorenz also expressed concern about Defendant's "lack of verifiable documentation" demonstrating that female student-athletes were receiving equal treatment and benefits. (*See* ECF No. 249 at 6–13.) It appears that Defendant has since implemented systematic record-keeping practices to monitor the CPHS athletic program for gender equality. Defendant attached a variety of records to its March 2020 status report to demonstrate compliance, such as a Title IX planning calendar (ECF No. 348-22), team rosters (ECF No. 348-14), a softball field maintenance log (ECF No. 348-30), practice schedules (ECF No. 348-32), coaching rosters (ECF No. 348-34), coach audits and evaluations (ECF Nos. 348-35; 348-36; 348-37), an athletic trainer schedule (ECF No. 348-39), a weight room schedule (ECF No. 348-40), and a weight room sign-in sheet (ECF No. 348-41). Defendant's seasonal status reports dating back to at least 2017 show a similar level of diligent record keeping and a further variety of records, such as uniform and equipment inventories, equipment maintenance logs, locker room assignments, band and cheer schedules, fundraising efforts, and student athletic interest surveys. (*See* ECF Nos. 329-3; 333-3; 335-3; 337-3; 338-3; 340-3; 342-3; 343-3.)

In addition to Defendant's genuine efforts to comply with the permanent injunction, the parties' relationship is now one of mutual respect and cooperation. The Court was able to witness the parties' professionalism and cordial relationship at the in-person Status Conference on February 18, 2020. During the Conference, Plaintiffs reported that, while there was still room for improvement, Defendant's progress in complying with the permanent injunction was to be applauded, and from Plaintiffs' perspective, the issue of contempt was moot. The parties further detailed that although they continue to have occasional disagreements regarding compliance, they are able to reconcile their disagreements through discussion. The parties also shared with the Court that on October

29, 2019, Dr. Vernon Moore (Chief Compliance Officer for SUHSD) and Ms. Jennifer Carbuccia (general counsel for SUHSD) even conducted a presentation titled, "Thriving Under a Court-Ordered Title IX Compliance Plan," which included a review of Title IX law as well as references to the CPHS Title IX case. (*See* ECF No. 343-7.) The parties' cooperative spirt is further demonstrated by the fact that the current request to discharge the OSC is before the Court on a joint motion.

Considering the totality of the circumstances, the Court finds that the ends of justice would no longer be served by holding Defendant in contempt for previous non-compliance with the permanent injunction. Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** the parties' joint motion.

## IV.   CONCLUSION

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) **GRANTING** the parties' Joint Motion to Withdraw Enforcement Motion and Vacate Order to Show Cause (ECF No. 346); (3) approving the **WITHDRAWAL** of Plaintiffs' Motion to Enforce Permanent Injunction (ECF No. 225); and (4) **DISCHARGING** the Order to Show Cause (ECF No. 249). Any objections to this Report and Recommendation shall be filed in accordance with 28 U.S.C. § 636(b)(1)(C).

**IT IS SO ORDERED.**

Dated: July 9, 2020

Hon. Jill L. Burkhardt
United States Magistrate Judge